UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LAWRENCE GOETZ and R & L LEASING, LLC,

                     Plaintiffs,         06 CV 8180 (RPP)

    - against -

                                        **OPINION & ORDER**

PETER HERSHMAN and SIEGEL O'CONNER
ZANGARI O'DONNELL & BECK P.C.,

                     Defendants.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

       Pursuant to the Court's May 24, 2011 order after remand from the Court of Appeals for the Second Circuit directing Plaintiffs Lawrence Goetz and R&L Leasing ("Plaintiffs") and Defendants Peter Hershman and his former law firm Siegel O'Connor Zangari O'Donnell & Beck, P.C. ("Defendants") to brief the issue of prejudgment interest awarded to Plaintiffs pursuant to §37-3(a) of the Connecticut General Statutes ("Conn. Gen. Stat."), Plaintiffs and Defendants filed their respective memoranda of law on July 1, 2011.

       For the following reasons, prejudgment interest of ten percent accruing from December 17, 2003 is awarded to Plaintiffs.

## I.    BACKGROUND

A.    <u>Factual Background</u>

       Plaintiffs' claims are based on Hershman's actions as an attorney during the time leading up to the dissolution of a 24 year business relationship between Goetz and Richard Volpe, a non-party to this action. The facts of the case were presented at trial through documentary evidence, the testimony of Goetz and Hershman, and the opinion

testimony of expert witnesses regarding the standard of professional care and duty of loyalty that lawyers owe their clients under Connecticut law and whether, based on a set of assumed facts, Hershman's conduct fell below the required level of professional care and duty of loyalty. The following facts are relevant to this order.

Goetz and Volpe began doing business together in 1979, when they owned a company called Able Automotive which operated a number of Midas Muffler stores. (Trial Transcript ("Tr.") at 33, 35.) In or around 1984, Goetz and Volpe formed a real estate company – R&L Leasing – and through that company acquired the commercial real estate underlying the Midas Muffler stores. (Id. at 33.) In 1995, R&L Leasing became an LLC, with all interests in R&L leasing – capital, income and voting rights – split 50/50 between Goetz and Volpe. (Id. at 40; Plaintiffs' Trial Exhibit ("Pls.' Ex.") 1.) In 1996, Volpe suffered a severe injury and became permanently disabled, and due to his disability, withdrew from management of R&L Leasing. (Tr. at 33, 35-36.) Thereafter, Goetz and Volpe entered into a series of agreements that altered their interests in R&L Leasing. (Pls.' Ex. 2-5.) Goetz testified that by September 2003, Volpe had "expressed some displeasure and disagreement with the agreements" and "wanted to return to 50/50 [income distribution]." (Tr. at 46.)

On October 2, 2003, Goetz, Volpe, and Hershman, met at Hershman's office to discuss Volpe's issues. (Id.) At the meeting, Goetz and Volpe agreed that going forward: (1) both the equity interest and the income distribution in R&L Leasing would be split 55/45 in Goetz's favor; (2) Goetz and Volpe would have 50/50 voting rights (i.e. equal control in R&L Leasing); and (3) Goetz would receive 45% of any recovery from Volpe's then pending insurance claim related to his 1996 injury and subsequent

disability.[1]  (Id. at 47-52.)  Goetz's testimony regarding the meeting is consistent with Hershman's notes from that meeting.  (Id. at 52.)  Goetz and Volpe instructed Hershman to draft the documents necessary to effectuate their agreement.  (Id. at 50.)

It took over two months to formalize the October 2, 2003 agreement into a final agreement.  (Id. at 54-55.)  Draft agreement documents were circulated.  (Id. at 55.)  On November 7, 2003, Goetz mailed signed copies of the circulated agreement documents to Hershman and in the accompanying letter informed Hershman that he could distribute the final, signed agreement once he had received Volpe's signed copies.  (Id. at 59.)

During this time, Goetz tried to contact Volpe to discuss the insurance litigation. (Id. at 63.)  Goetz did not learn of Volpe's insurance litigation settlement until the end of November 2003, when Volpe informed him of the $700,000 settlement – a figure lower than Goetz had been led to expect.  (Id. at 63-64.)

On December 8, 2003, Goetz e-mailed Hershman, requesting dissemination of the final, signed agreement documents (including a letter from Volpe acknowledging Goetz's share of the insurance recovery).  (Id. at 260-61.)  By cover letter addressed to Goetz and Volpe dated as of December 11, 2003, Hershman released:  (1) an agreement executed by both Goetz and Volpe dated as of December 31, 2002, that reflected the new income allocation, capital allocation and voting rights of R&L Leasing as agreed to at the October 2, 2003 meeting; (2) a letter executed by Volpe confirming that Goetz is entitled to 45% of the net proceeds from Volpe's insurance litigation; and (3) a letter executed by both Goetz and Volpe jointly releasing each other from any potential claims resulting from past income distributions (collectively the "2003 Agreement").  (Pls.' Ex. 6; Tr. at 66-67.)

---

[1] Glenn Duhl, Hershman's partner at Siegel O'Connor, was litigating Volpe's insurance claim.

3

On December 12, 2003, Volpe finalized his insurance litigation settlement, and the insurance company delivered a check for the settlement amount, payable to "Glenn Duhl, Esq., Trustee for Richard Volpe." (Pls.' Ex. 43; Tr. at 63.) On or about December 17, 2003, Defendants, after a deduction for certain legal fees and expenses, sent Volpe the balance of the proceeds from the insurance settlement. (See McNamara Affirmation, Feb. 26, 2010, ECF No. 99; Plaintiffs' Memorandum of Law in Further Support of Motion for an Award of Prejudgment Interest ("Pls.' Mem.") at 2; Tr. at 546.)

Unbeknownst to Goetz, sometime before the end of 2003, Volpe had discharged Siegel O'Conner as his counsel and retained new representation. (Tr. 68-69.) In January 2004, Goetz received a letter from Volpe's new counsel, and by mid-January, Goetz came to understand that Volpe was disavowing the 2003 Agreement, as well as two earlier agreements between Goetz and Volpe allocating ownership and income interests in R&L Leasing, and claiming that he owned 50% of R&L Leasing. (Id. at 69-71.) In early 2004, Goetz brought a lawsuit against Volpe, and the two entered into a "very lengthy and expensive court battle" in which Goetz sought to enforce the 2003 Agreement and to collect his share of the insurance litigation proceeds. (Id. at 98-100.) The Goetz v. Volpe lawsuit settled in April of 2006. (Id. at 101.) Under the terms of the settlement, the 2003 Agreement was not enforced. Instead, Goetz received 53% and Volpe received 47% of R&L Leasing and Goetz did not receive any portion of the insurance litigation proceeds. (Id.) Thereafter, this suit against Defendants for malpractice and breach of fiduciary duty was brought to obtain the difference between the Goetz v. Volpe settlement and what Goetz was entitled to under the 2003 Agreement.

4

As of late 2003, Goetz had known Peter Hershman for over 20 years, and Hershman had served as an attorney for Goetz personally, and for R&L Leasing since the early 1980s. (Id. at 36-37.) Goetz testified that in 2003, Hershman never discussed with him the possible implications of an attorney representing two parties who have an actual or potential conflict, nor did Hershman ever suggest that Goetz consult another attorney. (Id. at 91-92.) Goetz also testified that in 2003, he did not know – and Hershman never told him – that Volpe owed Hershman's law firm "a lot of money" in connection with Volpe's insurance litigation, (id. at 93,) or that Peter Hershman had executed and delivered to Volpe a sworn affidavit dated November 17, 2003 (the "Hershman Affidavit"),[2] which read, in its entirety:

> PETER D. HERSHMAN, being duly sworn, deposes and says that:
>
> 1. He represents Richard Volpe, an individual presently residing in New York, R&L Leasing Company L.L.C. of New York, and Lawrence Goetz, an individual presently residing in Florida.
>
> 2. In 1999, Richard Volpe and Lawrence Goetz discussed modifications and changes to their operating agreement with him which incorporated changes in the allocation of distributions.
>
> 3. In 1999, documentation regarding a possible change in the economic relationship between the parties, and a note between the parties related thereto was prepared by him.
>
> 4. To the best of his knowledge and based upon statements made to him by Lawrence Goetz and Richard Volpe, no such transaction in 1999 was consummated.

(Pls.' Ex. 25.) Goetz testified that the first two paragraphs of the Hershman Affidavit are true statements. (Tr. at 74-75.) Goetz testified that the fourth paragraph is "a lie" because the 1999 transaction was consummated and Hershman knew the 1999 transaction

---

[2] The Hershman Affidavit was prepared and executed before Hershman released the signed copies of the 2003 Agreement on December 11, 2003.

was consummated.  (Id. at 80-82; see Pls.' Ex. 9.)  Goetz testified that in November or December 2003 he had no knowledge of the Hershman Affidavit, and only became aware of its existence in early 2004 when he received a copy from Volpe's new attorney.  (Id. at 73, 87.)

Goetz testified that the deficiencies in Hershman's legal work were the "key factor" in his decision to settle the Goetz v. Volpe litigation.  (Id. at 101.)  First, Goetz testified that because Volpe alleged in the Goetz v. Volpe litigation that he had instructed Hershman not to release the 2003 Agreement without his consent and that he had never given that consent to Hershman, the enforceability of the 2003 Agreement was subject to attack.  (Id. at 102.)  Specifically, because Hershman did not obtain documentation of Volpe's consent to Hershman's release of the executed documents in December 2003, Volpe was able to argue in the Goetz v. Volpe litigation that Hershman released the executed copy of the 2003 Agreement improperly and accordingly, that the 2003 Agreement never became effective.  (Id. at 102, 105.)  Second, Goetz testified that the Hershman Affidavit (and Hershman's testimony in the Goetz v. Volpe litigation regarding the Hershman Affidavit) was false and that it also called into question the enforceability of the 1999 transaction, which in turn provided Volpe with an incentive to disavow the 2003 Agreement.  (Id. at 102-04.)  Goetz testified that these actions by Hershman in late 2003 and thereafter caused Goetz to conclude that the validity of both the 2003 Agreement and the 1999 transaction were subject to attack by Volpe, which caused Goetz to settle the Goetz v. Volpe litigation without receiving his share of the insurance litigation settlement as provided in the 2003 Agreement.  (Id. at 102.)

B.  Procedural Background

On January 27, 2010, after a six-day trial, a jury returned a verdict in favor of Plaintiffs, finding Defendants liable for attorney malpractice and breach of fiduciary duty and awarding Plaintiffs $810,000 in damages. On January 29, 2010, Plaintiffs moved for an award of prejudgment interest. On July 14, 2010, pursuant to Conn. Gen. Stat. § 37-3a(a), the Court awarded Plaintiffs prejudgment interest from the filing date of this action, October 5, 2006, of ten percent of $414,716.59, which is the full damages award less the full amount Plaintiffs claimed in litigation and settlement costs and fees. Goetz v. Hershman, No. 06-CV-8180 (RPP), 2010 U.S. Dist. LEXIS 70983, at *68-69 (S.D.N.Y. July 14, 2010).

On appeal, the Second Circuit vacated the award of prejudgment interest and remanded for further proceedings on this matter. Goetz v. Hershman, 423 F. App'x 3, 6 (2d Cir. 2011). Specifically, the Second Circuit noted that the Court "did not make a finding with regard to whether Richard Volpe or Hershman has any 'due or payable' debt to plaintiffs that Hershman could have wrongfully detained or assisted in detaining." Id. On May 24, 2011, the Court directed the parties to brief the issue of whether Volpe or Hershman had any "due or payable debt" to Plaintiffs that Hershman could have wrongfully detained or assisted in detaining.

## II.   DISCUSSION

A.   Legal Standard

Under Connecticut law, there is no right to recover prejudgment interest in a civil action unless the statute provides for interest. Foley v. Huntington Co., 682 A.2d 1026, 1043 (Conn. App. Ct. 1996); see Westport Taxi Service, Inc. v. Westport Transit Dist., 664 A.2d 719, 740 (Conn. 1995) (finding that the Connecticut legislature intended

7

specifically to include all available remedies for an antitrust violation in the statute, and that prejudgment interest could not be awarded because it was not specifically included). Conn. Gen. Stat. § 37–3a provides a substantive right to recover prejudgment interest, but only applies to certain claims.  Foley, 682 A.2d at 1043.  A prejudgment interest award "may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ."  Conn. Gen. Stat. § 37-3(a).

The Second Circuit noted that there were two statutory requirements for a prejudgment interest award: (1) a debt owed by the defendant or the defendant's client to the plaintiff, and (2) wrongful detention of the debt by the defendant.  Goetz, 423 F. App'x at 5.  See also Ceci Bros., Inc. v. Fire Twenty-One Corp., 840 A.2d 578, 585 (Conn. App. Ct. 2004) (affirming prejudgment interest on plaintiff's damages award based on plaintiff's foreclosed mechanic's lien because the claim was for a liquidated sum of money wrongfully withheld and equitable considerations warranted the payment of interest), cert. denied, 846 A.2d 881.  These requirements are consistent with the purpose of Conn. Gen. Stat. § 37-3a, which is "to make a plaintiff whole in certain cases in which the defendant has wrongfully deprived the plaintiff of the use of a liquidated sum of money."  Ceci Bros., 840 A.2d at 587.

A prejudgment interest award pursuant to Conn. Gen. Stat. § 37-3(a) "is limited to cases in which the damage is of a sort [that] could reasonably be ascertained by due inquiry and investigation on the date from which the interest is awarded."  Sosin v. Sosin, 14 A.3d 307, 325 (Conn. 2011) (internal citation omitted) (upholding prejudgment interest award pursuant to §37-3(a) on an order for the distribution of marital assets because the trial court could have reasonably concluded that the plaintiff wrongfully

withheld payment to the defendant).  By extension, prejudgment interest is not awarded where the party disputing liability "did not actually control *or* benefit from the detention of the money."  Travelers Prop. & Cas. Co. v. Christie, 916 A.2d 114, 125-26 (Conn. App. Ct. 2007) (emphasis added) (reversing award of prejudgment interest where defendant did not contractually agree to pay a sum certain before the appraiser began his work, had a good faith disagreement with the appraiser over the amount of his fee, and did not actually control or benefit from the detention of the money).[3]

Prejudgment interest is also not available for the plaintiff's injury, damage, or costs recovered in an action resulting from defendant's negligence.  Tang v. Bou-Fakhreddine, 815 A.2d 1276, 1287 (Conn. App. Ct. 2003); see Foley, 682 A.2d at 1044 (reversing trial court's award of prejudgment interest where the damages for the breach of contract were similar to damages in a personal injury claim in negligence "where a party is seeking to be made whole for the loss caused by another").  Prejudgment interest is not extended to damages awarded in negligence claims in part because "such damages are not considered due and payable until after a judgment in favor of the plaintiff has been rendered."  Wesport Taxi Service, Inc., 664 A.2d at 740.

In determining the applicability of prejudgment interest, "[t]he real question in each case is whether the detention of the money is or is not wrongful under the circumstances."  Cecio Bros., Inc. v. Feldmann, 287 A.2d 374, 379 (Conn. 1971).  The essence of the action itself must involve the wrongful detention of money due and payable to the plaintiff.  Tang, 815 A.2d at 1287.  Such wrongfulness is "not synonymous with bad faith conduct."  Ferrato v. Webster Bank, 789 A.2d 472, 477 (Conn. App. Ct.

---

[3] The Sosin court refrained from expressing any view on the merits of the holding in Travelers Prop. & Cas.. Sosin, 14 A.3d at 324 n.19.

9

2002); see Sosin, 14 A.3d at 322 (liable party can have a good faith basis for nonpayment and still detain money wrongfully). Instead, it refers to the defendant's commission or performance of an act without the legal right to do so. Ferrato, 789 A.2d at 477. This is consistent with the narrow reading of Chapman Lumber, Inc. v. Tager, 954 A.2d 1, 23-24 (Conn. 2008), cited by the Second Circuit, which involved a relationship between the defendant-attorney and a non-party client that rose to the level of a conspiracy to deprive the plaintiff of moneys owed. The assistance that the defendant-attorney provided in the perpetration of the scheme not only deprived the plaintiff monetarily, but constituted a civil conspiracy, which in Connecticut imposes civil liability on each co-conspirator for "all acts done by any of the conspirators in furtherance of the unlawful combination." Id. at 23.

Determining the debt eligible for prejudgment interest also establishes the commencement of the interest period, as "interest is awarded at the maturity of a debt from the time the money becomes due." Westport Taxi Service, Inc., 664 A.2d at 741.

B.      Due or Payable Debt

Plaintiffs were awarded prejudgment interest on $414,716.59, or the full damages award ($810,000) less the full amount claimed by Plaintiffs in litigation and settlement costs and fees. Goetz, 2010 U.S. Dist. LEXIS 70983, at *68-69. The $414,716.59 is comprised of Goetz's share of the insurance claim proceeds ($315,000), Goetz's lost income distributions from R&L Leasing ($78,174), and Goetz's lost ownership interest in R&L Leasing ($121,000). (Pls.' Mem. at 1-2.) Plaintiffs now request prejudgment interest only on Goetz's share of the insurance claim proceeds. (Id. at 2.)

To be eligible for prejudgment interest, Goetz's share of Volpe's insurance litigation settlement must have been due or payable prior to judgment. Plaintiffs argue that the "due or payable" debt requirement is satisfied because Siegel O'Conner, acting as Volpe's counsel, received the insurance proceeds and then, while aware of Goetz's right to 45%, caused those funds – after deduction for certain legal fees and expenses (Tr. at 546) – to be paid solely to Volpe on December 17, 2003, prior to the initiation of this lawsuit. (Pls.' Mem. at 6.) Defendants argue that the insurance recovery was not "due or payable" debt owed to Goetz because the money in question was awarded as negligence damages, and was therefore not due and payable until after judgment, and Hershman never controlled or benefitted from the money. (Defendants' Memorandum of Law in Opposition to Motion for Prejudgment Interest ("Defs.' Opp. Mem.") at 8, 9.)

Although Defendants did not benefit from paying the insurance settlement entirely to Volpe, according to the insurance settlement agreement, Defendants were in possession and control of Goetz's share of the insurance settlement prior to the commencement of Goetz v. Volpe. While Goetz's claims do arise out of professional negligence, Goetz's 45% share of the proceeds of the insurance settlement is economic damages, i.e. the money that (1) Hershman knew Goetz expected under the terms of the 2003 Agreement and (2) was available for payment by the Defendants to Goetz prior to the commencement of this litigation. Goetz's share of the insurance settlement was a sum certain, payable to Goetz after December 12, 2003.

C.   Debt Wrongfully Detained

The question remains whether Hershman's actions with respect to Plaintiffs' share of the insurance recovery were "without the legal right to do so." Ferrato, 789 A.2d at

11

477. Plaintiffs argue that Hershman "wrongfully detained" money owed to Goetz when Defendants "received the insurance proceeds in its trust account, and Mr. Hershman caused those funds to be paid 100% to Mr. Volpe, rather than 55% to Mr. Volpe and 45% to Mr. Goetz, as agreed in Mr. Volpe's October 30, 2003 letter, which was drafted by Mr. Hershman." (Pls.' Mem. at 6.)

Defendants argue that Goetz's admission on cross-examination that he expected to be paid directly by Volpe, (Tr. at 260,) coupled with Plaintiffs' counsel's admission during argument on appeal that there were no allegations of conspiracy between Hershman and Volpe to deprive Goetz of the insurance recovery, (Defs.' Opp. Mem. at 6-7,) makes Chapman Lumber distinguishable as there is no civil conspiracy claim here. Although, as Defendants argue, the record does not illustrate a civil conspiracy, the absence of proof of a conspiracy between Defendants and Volpe does not preclude prejudgment interest being awarded to Plaintiffs.  See Advanced Fin. Servs., Inc. v. Associated Appraisal Servs., Inc., 830 A.2d 240 (Conn. App. Ct. 2003) (finding that defendants wrongfully detained plaintiff's money where defendants knowingly submitted a false and misleading completion certificate to a non-party that caused plaintiff to foreclose and repurchase the underlying loan).

The proper focus is on the wrongfulness of the defendants' actions.  The evidence at trial established – and the jury found – that Hershman and Siegel O'Connor were the attorneys for both Goetz and Volpe in 2003 and Hershman had handled other personal matters for both clients.  (See Tr. at 896-97.)  Here, the jury had sufficient evidence to find that while he was representing Goetz, Hershman had violated his fiduciary duty to Goetz by providing Volpe with the false and misleading affidavit without notice to Goetz,

by not obtaining Volpe's consent to the distribution of the 2003 Agreement, and by distributing Goetz's share of the insurance proceeds to Volpe. The jury found that during his representation of Goetz, Hershman breached a fiduciary duty owed to Goetz and that the breach of fiduciary duty owed to Goetz by Hershman was a legal cause of damages to Goetz.

Goetz's "understanding" that Volpe was going to pay him directly, (Tr. 260,) and his knowledge that the insurance claim had settled when he e-mailed Hershman on December 8, 2003 requesting dissemination of the 2003 Agreement, including Volpe's letter regarding the insurance recovery, (id. at 260-61,) are irrelevant to whether the Defendants' conduct in sending to the insurance proceeds to Volpe was wrongful. Hershman knew that the 2003 Agreement – which he drafted – was executed prior to the insurance settlement agreement letter and included a letter from Volpe acknowledging Goetz's share of the insurance proceeds. Hershman also knew that the November 17, 2003 affidavit he furnished to Volpe was without any notice to Goetz and was in breach of his fiduciary duty to Goetz.

D.      Amount of Prejudgment Interest

By specifying the debt eligible for prejudgment interest, Plaintiffs also establish the commencement of the interest period. Volpe's insurance claim settlement agreement was dated December 12, 2003, (Pls.' Ex. 43,) but Plaintiffs state that the settlement funds were not released to Volpe until December 17, 2003. (Pls.' Mem. at 2.) Thus, the insurance proceeds were within Defendants' control – and payable to Plaintiffs – between December 12, 2003 and December 17, 2003. The $315,000 due to Goetz, pursuant to the

2003 Agreement, was first available for release prior to December 17, 2003 when Defendants released the insurance settlement proceeds to Volpe.

### III.   CONCLUSION

Defendants wrongfully deprived Plaintiffs of money due and payable on December , 17, 2003. Prejudgment interest of ten percent from December, 17, 2003 is awarded to Plaintiffs pursuant to Conn. Gen. Stat. § 37-3(a). The Clerk of the Court is directed to enter judgment for Plaintiffs in the appropriate amount.[4]

IT IS SO ORDERED.

Dated:  New York, New York
        December 6, 2011

Robert P. Patterson, Jr.
U.S.D.J.

---

[4] The interest period from December 17, 2003 until December 31, 2003 equals $1208.20. Annual interest for the period of December 31, 2003 through December 31, 2010 at ten percent equals $31,500.00 per year, for a total of $220,500.00. Interest in 2011 accrues at the per diem rate of $81.60 until judgment is entered.

14

Copies of this order were faxed to:

*Counsel for Plaintiffs:*

Thomas James Fleming
Olshan, Grundman, Frome, Rosenzweig & Wolosky, LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022
(212) 451-2213
Fax: (212) 451-2222


*Counsel for Defendant:*

Helen M. Benzie
Law Office of Vincent D. McNamara
Tower Square - Suite One
1045 Oyster Bay Road
East Norwich, NY 11732
(516) 922-9100
Fax: (516) 922-9208